## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Cory Norton, of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn depose and state the following:

### EXPERIENCE AND TRAINING

1. I am an investigative or law enforcement officer of the United States of America within the meaning of Section 2510(7) of Title 18, United States Code (USC), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. Your affiant is a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and has served in that capacity since November 18, 2015. Your affiant is currently assigned to the Norfolk Field Office and charged with investigating violations of Federal firearms, explosives, and arson laws, and other offenses enumerated in Title 18, Title 21, and Title 26 of the United States Code, for which I have received formal training at the Federal Law Enforcement Training Center and the ATF National Academy. Prior to appointment, I served as a Police Officer and Vice/Narcotics Detective with the Greensboro Police Department, in Greensboro, North Carolina, from April 16, 2007, to November 17, 2015. As such, I am an investigator or law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is a federal agent empowered to conduct investigations and enforce federal criminal statutes.

3. In the course of my employment as a sworn law enforcement officer, I have participated in the execution of search warrants resulting in the seizure of firearms, narcotics, and other items evidencing violations of state and federal law

4. I am familiar with the facts and circumstances of this investigation as a result of information received by me and summarized in reports I have reviewed. I have compiled information derived from discussions with experienced law enforcement officers.

5. This affidavit contains a probable cause statement to support the issuance of an arrest warrant for the violation alleged and does not contain all the information known to this affiant regarding the defendant. Based upon my experience and training, this affidavit is being made in support of a criminal complaint charging ADRIAN MASON with distribution of a mixture and substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

## STATEMENT OF FACTS

5. In 2022, members of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Portsmouth Police Department (PPD), (collectively hereinafter referred to as the "investigative team"), initiated an investigation pertaining to Adrian MASON regarding his role in the sale and distribution of a controlled substance, namely fentanyl within the City of Portsmouth, Virginia. The investigative team completed multiple controlled purchases of fentanyl from MASON on or about the months of December 2022 to March 2023, using an ATF confidential informant, hereinafter referred to as CI-1.

2

6.  CI-1 was provided with an audio/video recording device for all of the below mentioned controlled purchases. CI-1 and C-1's vehicle was searched before and after all controlled purchases with negative results for contraband.

7.  Information and intelligence on MASON have been gathered by the investigative team over several months with the use of several law enforcement techniques. Specifically, the investigative team has monitored MASON's distribution activities and through physical surveillance has observed MASON distributing narcotics near his suspected residence located in Portsmouth, VA. Portsmouth, Virginia is within the Eastern District of Virginia. CI-1 initially met MASON through another target of the investigation hereinafter referred to as T-1 and identified T-1 as a narcotics distributor.

8.  On or about December 2, 2022, CI-1 contacted T-1 to purchase a small quantity of fentanyl. T-1 agreed to sell the requested amount of fentanyl to CI-1. Upon meeting with T-1 for the purposes of completing a controlled purchase, C-1 was directed by T-1 to drive to another location, where the transaction was completed. CI-1 and T-1 then traveled together to the area of Seaboard Square apartments, where it is believed MASON resides. Upon arrival to the area of the Seaboard Square Apartments with T-1, CI-1 remained inside of his/her vehicle. T-1 exited CI-1's vehicle and made contact with a then unknown source of supply (SOS) later identified by law enforcement as Adrian MASON. MASON was operating a vehicle. CI-1 observed T-1 interacting with MASON before returning to CI-1's vehicle in possession of suspected fentanyl. CI-1 exchanged confidential funds with T-1 for the previously agreed quantity of fentanyl, which was approximately 3.6 grams. T-1 returned to MASON with the confidential funds provided by CI-1. Upon the completion of the controlled purchase, CI-1 provided the suspected

fentanyl to ATF, and an ATF agent turned the suspected fentanyl over to PPD. The suspected fentanyl was later sent to the Virginia State Lab, where it was confirmed that the substance included detectable quantities of both heroin and fentanyl.

9. On or about December 6, 2022, ATF conducted a controlled purchase of fentanyl directly from MASON. CI-1 initially contacted T-1 to arrange the controlled purchase. T-1 met with and directed CI-1 back to the area of the Seaboard Square Apartments. Upon arrival at the apartment complex with T-1, CI-1 remained inside of his/her vehicle and T-1 exited CI-1's vehicle. T-1 and MASON returned to CI-1's vehicle together. MASON entered CI-1's vehicle and sat in the front passenger area. CI-1 then exchanged confidential funds with MASON for the previously agreed quantity of fentanyl, which was approximately 3.5 and 3.6 grams. CI-1 later turned over the suspected fentanyl to ATF, and an ATF agent turned over the suspected fentanyl to PPD. The suspected fentanyl was then sent to the Virginia State Lab, where it was confirmed that the substance contained detectible quantities of both heroin and fentanyl.

10. On or about December 12, 2022, ATF conducted a controlled purchase of fentanyl directly from MASON. MASON's phone number was provided to CI-1 by T-1. CI-1 contacted MASON and requested a half ounce or fourteen (14) grams of fentanyl. MASON agreed to the amount and met with CI-1 near his residence, in the parking lot of Wawa located at 1200 Frederick Blvd, Portsmouth, VA. Upon arrival to Wawa, MASON met with CI-1 inside of his vehicle. CI-1 then exchanged confidential funds with MASON for suspected fentanyl.

11. It was later determined that MASON misunderstood the requested quantity of fentanyl agreed upon with CI-1. MASON was contacted by phone about the

weight and advised that he would be able to have the amounts requested on the next sale with CI-1. The suspected fentanyl, that weighed approximately 4.5 and 4.6 grams with packaging, was turned over by the CI to ATF, and an ATF agent turned over the suspected fentanyl to PPD. The suspected fentanyl was then sent to the Virginia State Lab, where it was confirmed that the substance contained detectible quantities of both heroin and fentanyl.

12. Your affiant was able to determine with use of law enforcement databases, that the phone number MASON used was associated with MASON and that MASON is the registered subscriber of the above listed number.

13. On or about December 19, 2022, the ATF conducted a controlled purchase of fentanyl directly from MASON. CI-1 made contact with MASON via the same phone number, that was previously used to set up a controlled purchase. The phone call between CI-1 and MASON was recorded. During the call, CI-1 requested one (1) ounce of fentanyl. Prior to agreeing to the requested amount MASON, stated that his "homeboy" was scared of CI-1. MASON alluded that his "homeboy" was the person that MASON was dealing with for the fentanyl/heroin and that person wanted to know if CI-1 was straight. After the conversation, MASON agreed to the amount and met with CI-1 near his residence, in the same Wawa parking lot located at 1200 Frederick Blvd, Portsmouth, VA. Upon arrival to Wawa, MASON met with CI-1 inside of CI-1's vehicle. CI-1 exchanged confidential funds with MASON for suspected fentanyl. Surveillance attempted to follow MASON from the buy location but was unable to maintain mobile surveillance. CI-1 provided the suspected fentanyl to the ATF, and an ATF agent turned over the suspected fentanyl to PPD. The suspected fentanyl was then sent to the Virginia

State Lab, where it was confirmed that the substance contained detectable quantities of both heroin and fentanyl.

14. On or about January 5, 2023, ATF conducted a controlled purchase of fentanyl directly from MASON. CI-1 made with MASON via the same phone number, that was previously used to set up a controlled purchase. CI-1 requested a one (1) ounce of fentanyl. MASON agreed to the amount and met with CI-1 near the Seaboard Square Apartments, in the parking lot of the Wawa located at 1200 Frederick Blvd, Portsmouth, VA. Upon arrival to Wawa, MASON met with CI-1 inside of CI-1's vehicle. CI-1 exchanged confidential funds with MASON for suspected fentanyl. Surveillance attempted to follow MASON from the buy location but was unable to maintain mobile surveillance. The suspected fentanyl was recovered by ATF and turned over to PPD. The suspected fentanyl was then sent to the Virginia State Lab, where it was confirmed that the substance contained detectable quantities of both heroin and fentanyl.

15. On or about January 12, 2023, ATF conducted a controlled purchase of fentanyl directly from MASON. CI-1 made with MASON via the same phone number, that was previously used to set up controlled purchases. CI-1 requested one (1) ounce of fentanyl from MASON. MASON agreed to the amount and met with CI-1 near the Seaboard Square Apartments, in the parking lot of the Wawa located at 1200 Frederick Blvd, Portsmouth, VA. Prior to initiating the controlled purchase ATF with the assistance of PPD, setup surveillance in an effort to follow MASON from his residence to his source of supply (SOS). Prior to the controlled purchase, MASON was surveilled travelling in a vehicle from the Seaboard Square Apartments to another residence located on Dale Drive in Portsmouth, VA. When MASON arrived at the Dale Drive residence, law enforcement

observed him enter, and remain inside for a short period of time before returning to his vehicle. Law enforcement then observed MASON travel directly from the Dale Drive residence to CI-1, who was waiting in the parking lot of the Wawa.

16. Upon arrival to Wawa, MASON met with CI-1 inside of CI-1's vehicle. CI-1 exchanged confidential funds with MASON for suspected fentanyl. The suspected fentanyl was recovered by ATF and turned over to PPD. The suspected fentanyl was then sent to the Virginia State Lab, where it was confirmed that the substance contained detectible quantities of both heroin and fentanyl.

17. On or about February 2, 2023, your affiant coordinated a controlled purchase of one (1) ounce of fentanyl from MASON. CI-1 met with MASON in the parking lot of Wawa located at 1200 Frederick Blvd, Portsmouth, VA to complete the transaction. MASON provided CI-1 with the previously agreed upon quantity of narcotics, in exchange for government funds. The suspected heroin/fentanyl field tested positive for the presence of fentanyl. The suspected fentanyl was recovered by ATF and turned over to PPD. The suspected fentanyl was then sent to the Virginia State Lab where it was confirmed that the substances contained heroin and fentanyl.

18. On or about March 22, 2023, your affiant coordinated a controlled purchase of one (1) ounce of fentanyl from MASON. Surveillance was established prior to the controlled purchase by ATF and PPD. MASON was observed entering and exiting the Dale Drive residence and then proceeding directly to the meeting location. Prior to the controlled purchase, March 21, 2023, MASON was contacted by CI-1 via his known number. MASON indicated that he would have to acquire the requested narcotics from an unknown male SOS. MASON asked specifically if CI-1 was going to guarantee that CI-1

was going to purchase the narcotics. During that phone conversation MASON advised that he was going to get the narcotics from his SOS. On March 22, 2023, MASON contacted CI-1 confirming that he had already acquired the narcotics from his SOS but was worried that CI-1 wasn't coming so he wanted to confirm that CI-1 still in fact wanted the narcotics and going to meet.

19. CI-1 met with MASON in the parking lot of Wawa located at 1200 Frederick Blvd, Portsmouth, VA, to complete the transaction. MASON provided the suspected fentanyl to an unknown light complexion black male, who entered CI-1's vehicle in possession of the narcotics. The male provided the CI-1 with the previously agreed upon quantity of suspected fentanyl, in exchange for government funds. MASON can be heard speaking to CI-1 during the transaction from the inside of a vehicle. MASON and the unidentified male were captured with use of the Dale Homes site cameras entering the Dale Drive residence prior to arriving at the meeting location. The suspected heroin/fentanyl field tested positive for the presence of fentanyl. The suspected fentanyl was recovered by ATF and turned over to PPD. The suspected fentanyl was then sent to the Virginia State Lab for confirmation of the identity of the substances.

20. On or about the April 21 and 30 of 2023, CI-1 was contacted by MASON via his known number. On both calls MASON stated that he was in possession of fentanyl for sale. On the April 30 phone call MASON offered an ounce of fentanyl to CI-1 for a cheaper price approximately, $2,300, stating that he needed to get rid of the narcotics in order to re-up (replenish his supply). These calls were captured on an ATF recorded line.

21. From in or about December 2022 to February 2023, the defendant distributed in excess of 100 grams of a mixture and substance containing fentanyl based on lab reports from the Virginia State lab.

22. Based on the above facts, I believe probable cause exists to charge Adrian Mason with distribution of a mixture and substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

_____
Cory Norton, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to before me this 8th day of ~~May 2021~~ June 2023.

_____
UNITED STATES MAGISTRATE JUDGE